IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

DAVID ANTHONY MAKRES and
ARVA MELISSA MAKRES,

         Debtors.

Filed / Docketed
December 7, 2007

Case No. 07-10736-M
Chapter 7

## MEMORANDUM OPINION

THIS MATTER comes before the Court pursuant to the Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) (the "Motion"), filed by Paul R. Thomas on behalf of the United States Trustee ("UST") for this region, and the Debtors' Response, filed by David Anthony Makres and Arva Melissa Makres ("Debtors"). The issue before the Court is whether the Debtors may deduct payments on account of secured debts, for purposes of the means test conducted under 11 U.S.C. § 707(b)(2),[1] when they have stated an intention to surrender the collateral at issue.[2] The parties have submitted a joint stipulation of facts and agreed that the Court may resolve this matter based on the parties' briefs without further hearing.[3] The following findings of fact and conclusions of law are made pursuant to Federal Rule of Civil Procedure 52, made applicable to this bankruptcy proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons set forth

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

[2] The Motion alternatively seeks dismissal pursuant to §§ 707(b)(2) and (3). The United States Trustee's Brief in Support of the Motion does not present law or argument in favor of dismissal under § 707(b)(3), and therefore the request for dismissal under that section is deemed abandoned.

[3] The Joint Stipulation of Facts, *at Docket No. 37*, indicates that if the Court rules in favor of the Debtors under § 707(b)(2), then the Motion "shall be withdrawn" by the United States Trustee. *Docket No. 37* at 4. Having ruled on the Motion, the Court believes that its withdrawal by the UST would be procedurally improper.

herein, the Motion is denied.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

## Findings of Fact

Debtors commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on April 19, 2007. Debtors have stipulated that their debts are primarily consumer debts, making them subject to the requirements of § 707(b). Along with their petition, the Debtors filed schedules A through J, a Statement of Financial Affairs, a Statement of Intention, and a Statement of Current Monthly Income and Means Test Calculation ("Form 22A"). On Form 22A, the Debtors reported current monthly income of $7,825.48 and annualized income of $93,905.76. The Debtors have a household size of six people. The applicable state median income for a six-person household is $68,654.00. Because their income exceeds the applicable state median family income, the Debtors were required to complete the expense portion of Form 22A. After completing the remainder of Form 22A, the Debtors checked the box indicating that the presumption of abuse does not arise in their case. On June 26, 2007, the United States Trustee filed a Supplemental Statement of Presumed Abuse alleging that the Debtors' case is presumed to be an abuse under § 707(b)(2).[4]

Debtors took possession of real estate in Catoosa, Oklahoma (the "Real Estate") in January 2006 and moved out in early September 2006. Debtors were required to move from the Real Estate

---

[4] *Docket No. 20.*

because the property would not pass building inspections due to the builder not completing the project. The property was deemed uninhabitable by Rogers County Code Enforcement. The last payments Debtors made on the debt associated with the Real Estate were made in August 2006 (first mortgage - AMC Mortgage and second mortgage - SLS Mortgage). As of the date of filing of their petition, Debtors had abandoned and intended to formally surrender the Real Estate. To this end, Debtors listed the Real Estate and checked the designation "Property will be surrendered" on the Chapter 7 Individual Debtor's Statement of Intention, which was filed with the petition.[5] Debtors' Schedule J Current Expenditures of Individual Debtors does not include a payment for the Real Estate. An Order of Abandonment and Terminating Stay relating to the Real Estate was entered on May 31, 2007, which terminated the automatic stay and directed the Chapter 7 trustee to abandon the trustee's interest in the property.[6] Notwithstanding their stated intention to surrender the Real Estate, Debtors included monthly payments of $1,700.00 (AMC Mortgage), $479.00 (SLS Mortgage), $8.33 (Woodstone Property Owners Association), and $28.17 (Harmony Star Marble) (totaling $2,215.50 per month), all relating to the Real Estate, on Form 22A in the section designated for "future payments on secured claims."

To the extent the "Conclusions of Law" contain any items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

The facts being undisputed, the Court is left to resolve a purely legal issue: when completing the expense portion of Form 22A, may Debtors deduct expenses for debts they do not intend to incur

---

[5] *Docket No. 1*, at 30.

[6] *Docket No. 14*.

in the future because they intend to surrender the collateral back to the secured creditor? Resolution of this issue involves interpretation of § 707(b)(2), which provides a detailed formula, commonly referred to as the "means test," for calculating whether granting relief under Chapter 7 of the Bankruptcy Code would be presumed an abuse under § 707(b)(1). Section 707(b)(2)(A)(iii) provides that:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–
>
> > (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
> > (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.[7]

While courts agree that interpretation of this section must begin with the plain language of the statute,[8] the unanimity on this issue ends there. Courts have focused on the words "scheduled as contractually due," and have come to differing conclusions about their meaning.

A majority of courts that have addressed this issue have concluded that debtors are allowed to deduct secured debt payments as expenses on Form 22A if they are contractual obligations of the debtors as of the filing date.[9] Most courts reaching this conclusion have found that the word

---

[7] § 707(b)(2)(A)(iii).

[8] *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.") (internal quotations omitted); *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989).

[9] *See In re Hayes*, 376 B.R.55 (Bankr. D. Mass. 2007); *In re Hansen*, __ B.R. __, 2007 WL 3333358 (Bankr. W.D. Okla. Sept. 20, 2007); *In re Galyon*, 366 B.R. 164 (Bankr. W.D. Okla. 2007); *In re Mundy*, 363 B.R. 407 (Bankr. M.D. Pa. 2007); *In re Zak*, 361 B.R. 481 (Bankr. N.D. Ohio

"scheduled" has its common dictionary meaning of "planned for a certain date."[10] Courts also focus on the phrase "contractually due," and find that the filing of a petition for relief under the Bankruptcy Code does not relieve debtors of their contractual liability on the secured debt, regardless of their intention to surrender the collateral securing that debt.[11] The court in *In re Walker* summarizes the argument as follows:

> The use of the phrase "contractually due" also indicates an intent to permit a deduction for all secured debts, regardless of whether the debt is reaffirmed or the collateral is surrendered. The surrender of the collateral does not change the fact that the payments are "contractually due." When a debtor files the bankruptcy petition, the debtor is contractually due for payments on the outstanding secured debts for the length of the contract. The debtor's contractual liability for the debt is not eliminated upon the surrender of the collateral. At the earliest, it may be eliminated by the entry of the discharge. At the latest, the contractual obligation may never actually be eliminated, but instead, the creditor would merely be enjoined from collecting the debt from the debtor in personam. *See Hall v. National Gypsum, Inc.*, 105 F.3d 225 (5th Cir.1997). In other words, nothing the debtor does or does not do changes the fact that scheduled payments remain contractually due.[12]

---

2007); *In re Haar*, 360 B.R. 759 (Bankr. N.D. Ohio 2007); *In re Hartwick*, 359 B.R. 16 (Bankr. D. N.H. 2007), *aff'd in part, rev'd in part sub nom Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007); *In re Randle*, 358 B.R. 360 (Bankr. N.D. Ill. 2006), *aff'd* , 2007 WL 2668727 (N.D. Ill. July 20, 2007); *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wisc. 2006); *In re Walker*, 2006 WL 1314125 at *3 (Bankr. N.D. Ga. May 1, 2006).

[10] *See, e.g., In re Walker*, 2006 WL 1314125 at *3; *In re Nockerts*, 357 B.R. at 502–03; *In re Galyon*, 366 B.R. at 168–69; *Fokkena v. Hartwick*, 373 B.R. at 654; *In re Hayes*, 376 B.R. at 61–62; *In re Randle*, 358 B.R. at 365. The court in *In re Harr* bucks the trend of the majority and finds that the word "scheduled" refers to a debtor's bankruptcy schedules, but also finds that "whether the word 'scheduled' is read according to its dictionary meaning or in conformity with its common bankruptcy usage is really a distinction without a difference." 360 B.R. at 766. The court in that case followed the majority of courts in finding that a debtor may deduct payments under the means test for collateral that will ultimately be surrendered to a secured creditor. *Id.* The court in *In re Love*, on the other hand, finds that the term "scheduled" has its ordinary dictionary meaning, but does not follow the majority of courts in concluding that the payments may be deducted from expenses in the means test. *In re Love*, 350 B.R. 611, 613 (Bankr. M.D. Ala. 2006).

[11] *See e.g., In re Walker*, 2006 WL 1314125 at *4.

[12] *Id.*

These courts conclude that the phrase "payments scheduled as contractually due" refers to "those payments required to be made on a monthly basis according to the debtor's contract with the secured lender."[13]

A minority of courts has taken a different approach, and concluded that debtors that state an intention to surrender collateral to a secured creditor may not deduct payments for same on Form 22A.[14]  The seminal case drawing this conclusion is *In re Skaggs*.[15]  The court in *In re Skaggs* concluded, without extensive citation to the Code, that "Congress used the phrase 'scheduled as' several times in the Bankruptcy Code to refer not to the common dictionary meaning for the word schedule (i.e., 'to plan for a certain date'), but to whether a debt is identified on a debtor's bankruptcy schedules."[16]  These courts also have a different interpretation of the phrase "contractually due."  The court in *In re Harris* stated that

> [w]hen a debtor surrenders collateral, the debtor is no longer required to make the scheduled installment payments. If there is a deficiency after application of the collateral proceeds to the indebtedness, an unsecured claim remains, but a secured debt no longer exists and no payment is due except for an unsecured deficiency balance. "Indeed, debtors return collateral to secured parties for the express purpose of lowering their monthly living expenses."[17]

Courts have also found that placing excessive emphasis on the phrase "contractually due" leads to

---

[13] *In re Hayes*, 376 B.R. at 62.

[14] *In re Skaggs*, 349 B.R. 594, 599 (Bankr. E.D. Mo. 2006) ("[T]he Debtors' schedules and statements form the basis from which the Court should determine whether a debt is 'scheduled as contractually due.'"); *In re Ray*, 362 B.R. 680 (Bankr. D.S.C. 2007); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006); *In re Love*, 350 B.R. 611, 614–15 (Bankr. M.D. Ala. 2006).

[15] *In re Skaggs*, 349 B.R. at 599.

[16] *Id.* (citing the single example of § 1111(a)).  *See also In re Harris*, 353 B.R. at 304 (quoting *In re Skaggs*, but providing no additional examples).

[17] *In re Harris*, 353 B.R. at 309 (quoting *In re Love*, 350 B.R. at 614–15).

an erroneous conclusion, finding instead that the court's focus should remain on the term "scheduled."[18]

In response to the assertion in *In re Skaggs* that the phase "scheduled as" is used several times in the Code to refer to items found in bankruptcy schedules, other courts have conducted a thorough examination of uses of that phrase in the Code.[19] That exercise shows that when the phase "scheduled as" or the term "scheduled" are used to refer to bankruptcy schedules, specific references to bankruptcy schedules and/or § 521 are made. When, on the other hand, those terms appear without further reference to bankruptcy schedules, they appear to have a more common dictionary definition, i.e., planned for a certain date.[20] This Court is further concerned by a passage found in *In re Skaggs* regarding its interpretation of the statutory language at issue. Upon reaching the conclusion that "the Debtors' schedules and statements form the basis from which the Court should determine whether a debt is 'scheduled as contractually due,'" the court supports its conclusion with the following argument:

> To focus on the single term "contractually due" without due consideration of the import of the term "scheduled" and the phrase "***in each of the 60 months following the date of the petition***" will miss the actual meaning and the intent of § 707(b)(2). A primary intent of Congress in the passage of BAPCPA was to ensure that those debtors who can pay their debts do so. In *In re Hardacre,* 338 B.R. 718, 725 (Bankr.N.D.Tex.2006), the court underlined this Congressional purpose as set out

---

[18] *In re Skaggs*, 349 B.R. at 600.

[19] *See e.g., In re Nockerts*, 357 B.R. at 502–03; *In re Mundy*, 363 B.R. at 407.

[20] *See In re Nockerts*, 357 B.R. at 502–03;  *In re Randle*, 358 B.R. at 365 ("There is no bankruptcy schedule that requires the debtor to list 'all amounts contractually due to secured creditors in each month of the 60 months following the date of the petition.'  So there is no bankruptcy schedule to which § 707(b)(2)(A)(iii) could refer."); *Fokkena v. Hartwick*, 373 B.R. at 654; *In re Hayes*, 376 B.R. at 61–62; *In re Galyon*, 366 B.R. at 168–69.

in 151 Cong. Rec. 2459 at 2469-70 (March 10, 2005).[21]

The quoted Code section actually reads as follows: "the total of all amounts scheduled as contractually due to secured creditors in each **month** of the 60 months following the date of the petition."[22] As the court in *In re Skaggs* reminds us, "in determining the plain meaning of a statute, 'the Court must give meaning and import to every word in a statute.'"[23]

This Court finds the analysis provided by *In re Walker*, *In re Nockerts*, and their progeny to be persuasive, and finds that the phrase "scheduled as contractually due" does not refer to items found on Debtors' schedules, but instead refers to payments to secured creditors scheduled to come due post-petition. The Court also finds that the plain meaning of the phrase "amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition" refers to Debtors' contractual obligations to secured creditors as of the petition date that are to come due within each month of the 60 months following that date, notwithstanding that Debtors have surrendered the property. This Court agrees that "the means test is aimed at capturing a snapshot of the debtor's financial state as of the date the petition is filed, rather than at constructing a forward-looking analysis of the debtor's financial situation."[24] The Court therefore concludes that based on the plain language of the statute, the Debtor correctly included payments to secured

---

[21] *In re Skaggs*, 349 B.R. at 600 (emphasis added).

[22] § 707(b)(2)(A)(iii)(I). While the Court acknowledges that such a misstatement of the statute may be a typographical error, the mistake has been replicated in at least one other opinion, *see In re Harris*, 353 B.R. at 309, as well as in several instances in the UST's brief submitted to this Court. While the Court does not suspect any intellectual foul play, it notes that the conclusion reached in *In re Skaggs* is undermined by the fact that the statutory language it purports to construe is misquoted by the court.

[23] *In re Skaggs*, 349 B.R. at 599. *See Negonsott v. Samuels*, 507 U.S. 99 (1993).

[24] *Fokkena v. Harkwick*, 373 B.R. at 655 (internal quotation removed).

creditors in its means test calculation under § 707(b)(2). Having been presented with no clear statement of Congressional intent in enacting this section,[25] the Court cannot find that this result is demonstrably at odds with the drafters' intentions.[26]

## Conclusion

The Court concludes that Debtors properly completed the means test on Form 22A, and that no presumption of abuse under § 707(b)(2) arises in this case. On that basis, the Motion is denied. A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 7th day of December, 2007.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

---

[25] Other courts have also reached the conclusion that legislative history is of little help in construing this section. *See In re Ray*, 362 B.R. at 684 ("The legislative history, such as it is, is of little help in that it largely repeats the statutory text.").

[26] *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' In such cases, the intention of the drafters, rather than the strict language, controls.") (citations omitted). *See also United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002) ("If the language is clear and unambiguous, the plain meaning of the statute controls.").